## NILSON v. HAMILTON et al.

No. 3118.   Decided July 11, 1918.   (174 Pac., 624.)

1. PUBLIC LANDS—ACQUISITION OF TITLE—LEGALITY. Where arrangement whereby certain persons were to obtain title from the government under the homestead act to certain premises occupied by one of their number and thereafter convey to him was illegal, as contrary to public policy, the proposed grantee acquired thereby no legal or equitable rights of any kind which he could transfer.   (Page 598.)

2. DEEDS—GRANTEE—CAPACITY. Deeds running to a deceased person or to his estate convey no title; there being no person in existence in law, named in the deed, authorized to receive, or having the legal capacity to receive, title.   (Page 600.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Geo. G. Armstrong,* Judge.

Suit by Priscilla H. Nilson against James C. Hamilton and others for partition.

Decree for plaintiff. Defendants, other than those admitted interest of plaintiff, appeal.

AFFIRMED.

*Rawlins, Ray & Rawlins, Stewart, Stewart & Alexander,* and *Van Cott & Moreton* for appellants.

*Wm. H. King* and *Samuel Russell* for respondents.

GIDEON, J.

Plaintiff by this action seeks to partition certain real property in Salt Lake County. Ownership is alleged as tenant in common with the defendants. The respective interests of the plaintiff and the several defendants are stated in the complaint. The defendants Leonora D. Kerr and Caroline Noakes answered, admitting the interest of plaintiff, and set up a like interest in themselves, and joined in the prayer for a partition of the premises. (The plaintiff and these two defendants are respondents here.) The remaining defendants (appellants) denied the interest or ownership of respondents in the premises and asked for a judgment of the court quieting their title as against the claims of the said respondents. The pleadings are very voluminous, covering about one hundred pages of the printed abstract. Trial was had before the court, findings were made in favor of the respondents, and a decree of partition was granted, giving the several parties the respective premises agreed upon by a stipulation filed in court. From the judgment of the court, granting partition, the appellants bring the case to this court.

All of the parties to this action are either children, grandchildren, or in some way related to James L. Hamilton, who died October 12, 1875, and who at the time of his death resided upon the premises in question. The facts out of which this suit arose are as follows:

About the year 1852 the deceased, James L. Hamilton, moved upon the premises in question, then a part of the public domain of the United States. From that date until his death he made his home with his family upon the premises, cultivated the same, and had exclusive possession thereof during all of that time. The lands in question consisted of three parcels, not contiguous, aggregating about seventy-five acres. One piece, called the homestead, contained twenty-four acres, and on that the deceased resided and constructed his residence. Another piece, designated a farm, consisted of thirty acres, and an additional piece of approximately twenty acres was known as pasture land. The different parcels of land thus occupied by the deceased were included in five separate homestead filings or applications made by his friends and neighbors, who resided in the immediate vicinity. The names of the homestead applicants, as given in the record, are Reuben Miller, John A. Hill, Andrew D. Parks, Hugh D. Parks, and John D. C. Hamilton; the last named being one of the sons of the said James L. Hamilton. The patents received by the respective patentees were dated in the years 1874 and 1875; the date of the last patent being April 1, 1875. It will be noticed that that was some six months and twelve days prior to the death of the said James L. Hamilton. After the death of James L. Hamilton, to wit, in the year 1875, the several patentees executed certain deeds purporting to convey that part of the premises theretofore occupied by Hamilton, included within the boundaries of their several patents, to James L. Hamilton, or to the estate of James L. Hamilton. Two of the deeds, those executed by Andrew D. Parks and Hugh D. Parks, named James L. Hamilton as grantee, and the others named the estate of James L. Hamilton, deceased, as grantee. James L. Hamilton left surviving him his widow, Mary Ann Hamilton, four sons, and six daughters. The widow continued to occupy the premises until the 6th day of April, 1910, the date of her death. During all of that time she received the rents therefrom. The so-called deeds executed by the several patentees were duly recorded some time after their execution.

The deeds or papers executed by the patentees in 1876, purporting to convey certain premises to James L. Hamilton, or the estate of James L. Hamilton, deceased, each recited a money consideration. In the year 1889 one of the sons, James C. Hamilton, died, leaving a widow and four children. In the year 1901, the children and heirs of James L. Hamilton evidently became doubtful as to whether the purported conveyances of 1876 did in fact convey the title or any interest in the premises to any one. In order, therefore, to obtain title to the premises, a meeting was had, and apparently was attended by all parties in interest except the widow of James C. Hamilton, deceased, and his children. At that meeting steps were taken to obtain a conveyance from the original patentees. Accordingly an agreement or understanding was arrived at between the parties. Fortunately, all of the patentees were still living except Reuben Miller. Only 1.43 acres of the land occupied by the deceased was included in the Miller patent. A new deed was procured from the remaining patentees, conveying a life estate in all the premises occupied by the deceased, James L. Hamilton, to the widow, Mary Ann Hamilton, for her natural life, with remainder over to the several children and heirs of said James L. Hamilton in equal shares (that is a one-tenth interest each), and also giving to the widow of James C. Hamilton and her children the one-tenth interest which he would have been entitled to, if still living. That deed was recorded, and respondents (plaintiff and defendants Kerr and Noakes) claim title by virtue of that deed.

James L. Hamilton left a will, and the defendants (appellants) claim by virtue of the terms of the will. The will in question bears date October 7, 1875, some five days prior to the death of the said James L. Hamilton, and reads as follows:

· "Mill Creek, Oct. 7, 1875.

"This is to certify that I, James L. Hamilton, being of a sound mind, do make my last will and testament. To my wife Mary Ann I leave the homestead where she at present resides proceeds of farm 30 acres and pasture for her and

family her natural life unless she marry, and if she marry this property fall to my four sons, John C., James C., Joseph C., and William H., to be divided equally and they see to the children and provide for them till they either marry or are capable of managing for themselves. At the decease of my wife Mary Ann I bequeath to my daughter Sarah Jane one hundred dollars, to Elizabeth fifty dollars, to Caroline one hundred dollars, Charlotte one hundred dollars, Nora D. one hundred dollars, and Priscilla one hundred dollars. In connection with the homestead at my wife's decease I wish divided among my four boys above named the thirty acres of land and pasture.''

It is the contention of the respondents that at the date of the will, and at the date of his death, the deceased, James L. Hamilton, had no devisable interest in the premises in question, and therefore the title thereto could not and was not affected by the terms of the will; that the purported conveyances made by the patentees in 1876 conveyed no interest to any one, and were mere nullities; that the title in the premises, both legal and equitable, remained in the original patentees until the deed of 1901; and that the rights of appellants and respondents are fixed and determined by that deed. On the other hand, it is the contention of the appellants that it must be assumed or presumed that some time after the dates of the several patents the said James L. Hamilton in his lifetime bought the specific property, which was afterwards attempted to be conveyed to his estate and to him, from the patentees, and paid them the price mentioned in the several deeds, and that the patentees from that date on held the title in trust for the said Hamilton, or, as it is argued, the purchase having become complete, that by operation of law the title vested in Hamilton, and existed there at the date of his death. We find nothing in the record to support the contention of appellants. The long and exclusive occupancy of the premises by the deceased, the desire and attempt of the several patentees to convey such premises to him or his estate, lead to but one rational or reasonable conclusion —that the deceased in his lifetime, and while he was making

his home upon the premises, had an understanding or agreement with his neighbors that they should obtain title to the premises occupied by him under their homestead applications, and that thereafter a conveyance should be made to him of all parts of the premises included within his inclosures and embraced in the patents to the several patentees; that the consideration mentioned in the several purported deeds was simply the prorated part of the expense actually paid by the patentee in obtaining patent from the government. That conclusion is borne out by the deeds themselves. The consideration mentioned in the Miller conveyance, which is for 1.43 acres, is $2.90; the conveyance from Hill, for 5.43 acres, $5.25; the one from Hamilton, for 45.53 acres $16.90; the one from Andrew D. Parks, for sixteen acres and seventy square rods, $9.50; and the one from Hugh D. Parks, for seven acres and forty square rods, $6.

It need not now be discussed or considered whether this arrangement between the deceased and the several patentees was contrary to public policy, and therefore illegal, for that is admitted by every one to this action, if such an agreement or contract existed. The title granted by the homestead act gives to the patentee both the legal and equitable estate, and any prior arrangement made by him with any one concerning the title of any such premises is against the public policy of the government, is illegal, and not enforceable. It is immaterial whether the patentees, the parties to such agreement, are willing and ready to carry into effect such contract or agreements. The fact remains that it gives to the other party no legal or equitable right recognized by the courts, or which could or would be enforced. Neither did it give to the contracting party any enforceable right which he could transmit, by assignment or succession, to any one. In other words, Hamilton in this case had absolutely no right which he could enforce, or which he could transfer, and therefore had no devisable interest, and any one attempting to claim or take from him by purchase or inheritance would stand in no better position or relation than he himself, and would therefore acquire no right which the courts could recognize or enforce.

*Anderson* v. *Carkins,* 135 U. S. 488, 10 Sup. Ct. 905, 34 L. Ed. 272.

We need not stop to discuss or declare that the attempted conveyances of 1876 to James L. Hamilton, who was then deceased, or to the estate of James L. Hamilton, deceased, did not convey any title to any one. There was no person in existence in law, named in the deed, authorized to receive, or who had the legal capacity to receive the title to the premises. It must therefore be concluded that these attempted conveyances of the several patentees in 1876 were mere nullities. 13 Cyc. 527; *Rixford* v. *Zeigler et al.,* 150 Cal. 435, 88 Pac. 1092, 119 Am. St. Rep. 229; *McInerney* v. *Beck,* 10 Wash. 515, 39 Pac. 130; 1 Devlin, Deeds (3d Ed.) section 187. It necessarily follows, from the foregoing, that the deceased, James L. Hamilton, at the date of his death, had no devisable interest in the premises, and the appellants acquire no title or interest in the premises by reason of his will.

The foregoing is decisive of this appeal. There are other questions presented and argued but the conclusions reached make them immaterial.

The judgment of the district court is clearly right, and accordingly is affirmed. Respondents to recover costs.

Since the preparation of the foregoing opinion our attention has been called to a former decision of this court, *Miles* v. *Johnson,* 18 Utah, 428, 56 Pac. 299, which, it is alleged, is in apparent conflict with the conclusions here reached. The opinion in *Miles* v. *Johnson* was written in the year 1899. No reference is made therein to the holding of the Supreme Court of the United States in *Anderson* v. *Carkins,* 135 U. S. 488, 10 Sup. Ct. 905, 34 L. Ed. 272. Section 2274 Rev. Stat. U. S. was in force at the time of the rendering of the opinion in *Anderson* v. *Carkins,* and, as such, was binding upon this court in determining the rights of parties claiming under facts similar to those stated in this case.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.