Filed 8/26/14  Pyle v. Rastegar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWIN L. PYLE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BEN RASTEGAR, <br><br> Defendant and Respondent. | F067350 <br><br> (Super. Ct. No. 12CECG01383) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark Wood Snauffer, Judge.

Jacques LeBoeuf for Plaintiff and Appellant.

Campagne, Campagne & Lerner, Thomas E. Campagne and Wiley R. Driskill for Defendant and Respondent.

-ooOoo-

This is an appeal from a judgment of dismissal of the Superior Court of Fresno County. Plaintiff and appellant Edwin L. Pyle sued defendant and respondent Ben Rastegar for breach of contract. Rastegar demurred to Pyle's complaint on the basis of res judicata. The court sustained the demurrer without leave to amend and dismissed the lawsuit. On appeal, Pyle[1] contends the demurrer should be overruled because he did not raise a claim or issue already litigated and decided in an earlier proceeding. We conclude a former judgment collaterally estopped Pyle from pursuing an action for breach of contract. Therefore, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY[2]

### I.  The prior proceeding

Pyle and his wife Adele leased 118 acres of vineyards to Rastegar for the 2008 growing season. The lease allocated certain expenses between the parties and required Rastegar to "'farm said land in a farmerlike manner according to best farming methods practiced in this vicinity.'" The lease also provided that Rastegar would harvest and sell the crop, either as raisins or as wine grapes. The Pyles would receive as rent "'the sum of 22.5% of the proceeds of the sales of the said crop,'" together with reimbursement from the crop proceeds for the cost of electricity to run the irrigation pumps on the property. (*Pyle v. Moles*, *supra*, F060873.)

---

[1]  In this opinion, "Pyle" refers to Edwin Pyle and "Pyles" refer to Edwin and Adele Pyle.

[2]  "Because judgment was entered upon the granting of demurrer, our summary of facts is limited to those pled in the complaint, together with facts judicially noticeable." (*Tri-County Special Educ. Local Plan Area v. County of Tuolumne* (2004) 123 Cal.App.4th 563, 569.) In particular, we have taken judicial notice of our prior decision (*Pyle v. Moles* (May 8, 2012, F060873) [nonpub. opn.]; see Cal. Rules of Court, rule 8.1115(b)(1)) "in deciding whether to sustain a demurrer based upon res judicata" (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486; see Evid. Code, §§ 452, 459).

In May 2008, Pyle determined that Rastegar ceased farming. According to Pyle, Rastegar was no longer at the property and stopped paying the person he had hired to irrigate the vineyards. Without informing Rastegar, Pyle entered into a contract with E & J Gallo Winery (Gallo) on July 7, 2008, for the grapes growing in the vineyards. Thereafter, on July 16, 2008, Rastegar entered into a contract with Caruthers Packing Company (Caruthers) for the raisin crop he was growing under the lease with the Pyles.

On July 18, 2008, Pyle sent a demand letter to Rastegar for payment of $5,538 for electricity and irrigation water. On or around August 2, 2008, he sent another letter stating that the lease had been terminated for "'sub-standard farming'" practices. On or about August 7, 2008, Pyle met with Rastegar and received three money orders totaling $2,500. On or about August 26, 2008, Pyle told Rastegar not to return to the property. When Rastegar refused to leave, Pyle called the sheriff to remove him. (*Pyle v. Moles*, *supra*, F060873.)

Rastegar related the dispute to Ermel R. Moles, his lender[3] as well as the contract buyer for Caruthers. Rastegar and Moles met with the latter's attorney, who prepared and signed a promissory note, security agreement, and UCC financing statement, the last of which was filed with the Secretary of State. The attorney also became aware that Pyle had contracted with Gallo and, on August 28, 2009, sent a demand letter to the Pyles and Gallo advising them of Rastegar and Moles's claims against the grape crop. In September 2008, Pyle caused the grapes to be harvested and delivered to Gallo.

Gallo filed an interpleader action against the Pyles, Rastegar, and Moles. After Gallo was dismissed from the case, the matter proceeded to a bench trial on the Pyles' cross-complaint against Rastegar and Moles, which alleged abuse of process and intentional interference with the Gallo contract, and Rastegar and Moles's cross-

---

[3]    Rastegar owed Moles approximately $60,000 for expenses on various vineyards, including those leased from the Pyles.

3.

complaint against the Pyles, which alleged conversion of the grape crop. Rastegar and Moles filed a demurrer to the Pyles' cross-complaint, which was denied by the superior court for the following reason: "'Although the first cause of action [does not] allege a cause of action for abuse of process … a valid cause of action for breach of contract … is alleged.'" The court instructed the Pyles that they could not present evidence or argument in support of an abuse of process claim. None of the parties requested a statement of decision. (*Pyle v. Moles*, *supra*, F060873.)

Following posttrial briefing, the superior court rendered judgment on July 15, 2010, in favor of Rastegar and Moles for the value of the grapes if they had been made into raisins and sold to Caruthers, with an offset to the Pyles for rent and the costs of harvesting and operating the irrigation system. It also found Rastegar and Moles were the prevailing parties and entitled to attorney's fees under the lease. In the final judgment filed October 1, 2010, the court awarded costs and attorney's fees to Rastegar and Moles and ordered the clerk of the court to release all remaining interpleader funds to them. Pyle appealed to this court.

On appeal, we observed, and the parties agreed, that although the October 1, 2010, judgment did not expressly rule on the causes of action in either of the cross-complaints, the superior court's measure of damages indicated that it found for Rastegar and Moles on their conversion claim and against the Pyles on their claims. Pyle contended the judgment should be reversed on the conversion claim because trial evidence showed Rastegar abandoned his leasehold interest and therefore consented to his and his wife's dominion over the grape crop.[4] In affirming the October 1, 2010, judgment in its entirety, we concluded substantial evidence supported the court's implied finding that

---

[4]     Pyle also asserted (1) he adequately pled a cause of action for abuse of process; (2) he was entitled to recover on his cause of action for intentional interference with contract; and (3) respondents acted with unclean hands. (*Pyle v. Moles*, *supra*, F060873.)

Rastegar did not abandon his leasehold interest and, for that reason, Rastegar and Moles possessed sufficient interests in the crop to uphold the conversion claim.**5** (*Pyle v. Moles*, *supra*, F060873.)

## II.    The present lawsuit

On April 27, 2012, Pyle sued Rastegar for breach of the lease, alleging Rastegar abandoned the property. On January 4, 2013, Rastegar filed a demurrer to the pleading on the basis of res judicata. In the final judgment filed February 19, 2013, the superior court sustained Rastegar's demurrer without leave to amend and dismissed the matter, finding the lawsuit "'*clearly … based on many of the same facts, issues and claims as the earlier 2008 action.*'" Pyle filed a notice of appeal on April 24, 2013.

## DISCUSSION

Appellate review of a judgment of dismissal following an order sustaining a demurrer entails a de novo examination of the complaint to determine whether the facts alleged were sufficient to state a cause of action under any legal theory. (*Protect*

---

**5**    We detailed:

"The evidence showed that Rastegar hired someone to irrigate the vineyards and, although he stopped paying his worker at some point, he did not instruct the worker to stop performing the assigned irrigation tasks. Rastegar proceeded in accordance with his practice of prior years to sell his prospective crop to a raisin packer. When [Pyle] demanded payment for utility bills, Rastegar made partial payments. When [Pyle] complained that Rastegar was not adequately controlling the weeds growing on the property, Rastegar came to the property to attempt a remedy, even though [Pyle] prevented him from doing so. All such actions objectively indicate an intent by Rastegar to continue his tenancy. [Citation.] While there was conflicting evidence from which a trier of fact might have concluded Rastegar abandoned the property, that evidence fell far short of establishing abandonment as a matter of law. In the absence of surrender or abandonment of the lease property, [Pyle] was not entitled to retake possession of the property. In the absence of abandonment, as a matter of law Rastegar was still in possession of the grape crop when [Pyle] seized the crop and delivered it to Gallo." (*Pyle v. Moles*, *supra*, F060873.)

*Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 557.) For this purpose, we "accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672.) On appeal, the appellant bears the burden of showing the superior court erred in sustaining the demurrer. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; *Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 219.)

A demurrer may be used to assert the doctrine of res judicata. (See, e.g., *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788.) Our Supreme Court has explained:

> "'As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment … 'operates'" in "a second suit … based on a different cause of action … 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.] "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]'" [Citation.]" (*Id.* at p. 797.)

Together with the prerequisite elements, collateral estoppel "requires the additional elements that the issue to be precluded was actually litigated and necessarily decided." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83.)

Pyle contends the demurrer should be overruled because he did not raise a claim or issue already litigated and decided in a prior proceeding. We disagree. In the present lawsuit, Pyle alleged Rastegar breached the lease by way of abandonment. In the prior

6.

proceeding, on appeal, the issue of abandonment was actually litigated by Pyle as a counterargument to Rastegar and Moles's claim for conversion. (See *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 871 [issue "'actually litigated'" when properly raised by pleadings *or otherwise*, submitted for determination, and determined].) Thereafter, we affirmed the superior court's implied finding that Rastegar did not abandon his leasehold interest. (*Pyle v. Moles*, *supra*, F060873; see *Grable v. Grable* (1960) 180 Cal.App.2d 353, 359-360 ["[A] decision of an appellate court … falls within the purview of the doctrine of res judicata and is conclusive of the issues and matters determined by the appellate court."]; accord *Overstreet v. County of Butte* (1962) 57 Cal.2d 504, 507; *Dept. of Water & Power v. Inyo Chem. Co.* (1940) 16 Cal.2d 744, 750.) Since the issue was previously raised, litigated, and resolved, Pyle was collaterally estopped from pursuing the present action.[6]

## DISPOSITION

The judgment of the superior court is affirmed. Costs on appeal are awarded to respondent.

_____

DETJEN, J.

WE CONCUR:


_____

GOMES, Acting P.J.


_____

KANE, J.

---

[6] In view of our holding, we need not address the parties' contentions related to claim preclusion.